COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


FREDERICK CUMMINGS WHITEHEAD

MEMORANDUM OPINION* BY
v.    Record No. 2883-00-1        JUDGE LARRY G. ELDER
JUNE 26, 2001
PATTI ANDERSON WHITEHEAD


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Judge

John R. Lomax (Berry, Ermlich, Lomax &
Bennett, on brief), for appellant.

Grover C. Wright, Jr., for appellee.


Frederick Cummings Whitehead (husband) appeals from a final

decree of divorce granting his former spouse, Patti Anderson

Whitehead (wife), a lump sum equitable distribution award,

periodic spousal support and payment of a portion of her

attorney's fees. On appeal, husband contends the trial court

erroneously classified certain separate property as marital,

failed to award him credit for his interest in the marital home

and the marital portion of wife's retirement benefits, and

awarded wife spousal support and attorney's fees. We hold the

attorney's fee award was not an abuse of discretion under the

facts of this case. As to the equitable distribution, we hold

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

the trial court's failure to award husband a share of the marital home or wife's retirement also did not constitute an abuse of discretion and conclude that husband failed properly to preserve his objection to the classification of the boat as marital property.  However, we conclude the trial court's classification of $9,100 husband withdrew from the parties' joint account as marital was erroneous because undisputed evidence retraced the funds to husband's separate property, an inheritance from his mother.  Thus, we reverse the equitable distribution award and remand to the trial court for further proceedings consistent with this opinion.  Because we reverse the equitable distribution award, we do not reach the issue of spousal support, and we direct the trial court to consider this issue anew in light of the changed equitable distribution award.

## A.

### EQUITABLE DISTRIBUTION

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge . . . ."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

> Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

-

Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

On appeal, we review the evidence in the light most favorable to

the party prevailing below.  See, e.g., Anderson v. Anderson, 29

Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

1.

Classification of Property

Inheritance

Code § 20-107.3(A) provides that

> Separate property is . . . all property
> acquired during the marriage by bequest,
> devise, descent, survivorship or gift from a
> source other than the other party . . . .
> When marital property and separate property
> are commingled by contributing one category
> of property to another, resulting in the
> loss of identity of the contributed
> property, the classification of the
> contributed property shall be transmuted to
> the category of property receiving the
> contribution.  However, to the extent the
> contributed property is retraceable by a
> preponderance of the evidence and was not a
> gift, such contributed property shall retain
> its original classification.

Code § 20-107.3(A)(1), (3)(d).  "[T]he party claiming a separate

interest in transmuted property bears the burden of proving

retraceability."  von Raab v. von Raab, 26 Va. App. 239, 248,

494 S.E.2d 156, 160 (1997).  "This process involves two steps:

a party must first (1) establish the identity of a portion of

hybrid property and (2) directly trace that portion to a

separate asset."  Rahbaran v. Rahbaran, 26 Va. App. 195, 208,

494 S.E.2d 135, 141 (1997).  "When a party satisfies this test,

-

and by a preponderance of the evidence traces his or her separate contributions to commingled property, the Code states that the contributed separate property 'shall retain its original classification.'" Hart v. Hart, 27 Va. App. 46, 68, 497 S.E.2d 496, 506 (1998) (quoting Code § 20-107.3(A)(3)(d), (e)) (emphasis in Hart).

Thus, a court commits reversible error in refusing to classify as separate property a spouse's inheritance where the spouse proves she deposited the inheritance into a joint account from which the parties subsequently made no withdrawals. See id. "Under these circumstances, the Code mandates that [the spouse's] deposit be classified as separate property." Id. at 68, 497 S.E.2d at 507; see also Brown v. Brown, 324 S.E.2d 287, 289 (N.C. Ct. App. 1985) (holding that separate property deposited into marital bank account was retraceable where no withdrawals were made after deposit and balance never fell below amount of deposit), cited with approval in Hart, 27 Va. App. at 68, 497 S.E.2d at 506.

However, where a spouse makes a deposit of separate funds into a joint account into which

> unspecified sums of marital funds were
> thereafter deposited and withdrawn . . . ,
> [with] the balance regularly ebbing and
> flowing for months[,] . . . the identity of
> [the spouse's] separate funds ha[s] been
> lost in countless unspecified transactions
> involving marital funds, resulting in the
> irreversible transmutation of separate into
> marital property.  Under such circumstances,

-

> [a] court [is] unable to properly trace and preserve the integrity of [the spouse's] separate property.

Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000).

Here, the commissioner concluded that the $9,716.65 husband withdrew from the parties' joint account was marital property under Asgari because it was transmuted and its separate identity lost. The trial court adopted this classification. We hold that this classification was erroneous because even the evidence offered by wife proved that $9,100 of the money husband withdrew was retraceable as his separate property.

Wife offered into evidence an account statement which established that the parties' transactions involving the joint account were minimal. As of March 6, 1998, the account had a balance of $703.55. On that day, husband deposited $9,100 into the account, bringing the balance to $9,803.55. Wife agreed that the source of the $9,100 deposit was husband's inheritance from his mother, and she did not argue at any point in these proceedings that his deposit of the money into the joint account constituted a gift. During the six weeks following that deposit, only four account transactions occurred. In three different transactions, husband withdrew $3,000, $1,000, and $5,717.65, for a total of $9,717.65. The only other transaction occurring during that period was a deposit of $14.10 from an unknown source. Thus, unlike in Asgari, "unspecified sums of

-

marital funds" were not "deposited and withdrawn from the account, [with] the balance regularly ebbing and flowing for months."  33 Va. App. at 403, 535 S.E.2d at 648.

The facts of this case are more similar to those of Hart and Holden v. Holden, 31 Va. App. 24, 520 S.E.2d 842 (1999).  In Hart, we held inheritance money was retraceable because no withdrawals were made from the account after the inheritance money was deposited.  27 Va. App. at 67-68, 497 S.E.2d at 506-07.  In Holden, we held that Mr. Holden's separate funds were retraceable even though other deposits and withdrawals occurred during the relevant time period.  31 Va. App. at 29, 520 S.E.2d at 845.  In Holden, it was uncontested that the February 1992 deposits into the parties' joint account were derived from the sale of Mr. Holden's separate property; that the deposits were made so the parties would have sufficient funds for a down payment on a piece of real estate; and that, absent the deposit of Mr. Holden's separate funds, the parties would have lacked sufficient funds to make that down payment in April 1992.  Id.  Under those circumstances, we reversed the trial court's conclusion that Mr. Holden failed to retrace the separate property that had been commingled with marital property.  Id. at 29-30, 520 S.E.2d at 845.

Here, also, it was uncontested that the monies originally deposited were husband's separate property.  Although husband subsequently withdrew monies from the joint account, these

-

withdrawals were virtually the only transactions that occurred involving the account and, therefore, to the extent the withdrawals equaled the sum of $9,100 husband had deposited, should have been viewed by the court as husband's reclamation of his separate property rather than as an improper withdrawal of marital funds in anticipation of separation. However, as to the portion of the withdrawals exceeding husband's $9,100 deposit, the funds were properly classified as marital because husband offered no additional tracing evidence to establish that they were separate. Therefore, $617.65 was properly classified as marital and subject to division by the court.

Boat

Husband contends the trial court erroneously classified the boat, motor and trailer as marital property, contending the evidence established the parties' agreement that these items were husband's separate property. Wife asserts that husband failed properly to preserve this issue for appeal because his exceptions to the commissioner's report positively admitted the boat was marital property.

We hold that our review of this issue is, in fact, barred due to husband's failure properly to present it to the trial court. See Rule 5A:18. Husband's only reference to the commissioner's and trial court's treatment of the boat, motor and trailer was in exception 8 to the commissioner's report:

-

> The Commissioner erred in paragraph 22(F) of his Report in recommending that Wife receive a monetary award of $4,982.32 for the reasons stated in Exception 6 in that it is based on [Husband's] separate property[, the money Husband inherited from his mother]. The only marital property on which to base a monetary award was the boat, motor and trailer, which is more than offset by [Husband's] interest in the marital home.

Husband's reference in the first sentence of exception 8 to husband's separate property referred to his inheritance. In the second sentence of exception 8, husband specifically referred to the boat, motor and trailer as marital property, and nowhere in his exceptions did he reference paragraph 22(B)II. and III., in which the commissioner specifically classified the boat, motor and trailer as marital property and classified the motor vehicles as separate property pursuant to the parties' separation agreement. Thus, the trial court had no opportunity to consider this claimed error, and we will not consider it for the first time on appeal.

2.

Interest in Marital Home and Wife's Retirement

Marital Home

Husband, when asked at the commissioner's hearing to state "[his] position regarding . . . the division of [the marital] residence," said he "was willing to let [wife] have the house along with everything in it." When his own attorney asked him what he "want[ed] in consideration of giving [wife] the house,"

-

husband responded, "Not a thing."  Although husband's attorney seemed surprised by that answer, wife's counsel then observed, "That is the same answer he gave in his interrogatory answer. It is no surprise.  There is no equity in it."  Based expressly on husband's testimony that he wanted nothing for his share of the marital residence, the commissioner recommended that the property be transferred to wife.  Although husband subsequently objected, the trial court adopted the commissioner's recommendation.

Husband concedes the evidence supported the trial court's finding that the net equity in the marital residence was $3,355.56.  No presumption exists in Virginia law favoring an equal division of property, see, e.g., Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990), and the decision whether to award husband a share of the equity in the marital residence rested within the discretion of the trial court, Srinivasan, 10 Va. App. at 732, 396 S.E.2d at 678.  We hold the trial court did not abuse its discretion, especially in light of husband's interrogatory answers and testimony that he was "willing to let [wife] have the house" and wanted nothing in return.  See Asgari, 33 Va. App. at 403-04, 533 S.E.2d at 648 ("Husband will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his representations."); Anderson, 29 Va. App. at 691, 514 S.E.2d at 378 (holding court did not abuse its discretion in refusing

-

to permit husband to withdraw from stipulation that parties would themselves determine classification and value of tangible personal property rather than submitting that issue to court).

Wife's Retirement

The evidence husband offered regarding wife's retirement plan was limited to wife's testimony that she had worked for Chesapeake General Hospital for five years and that "[t]here is a small retirement plan . . . after twenty years of working." After husband elicited that testimony, wife's counsel responded, "[W]hat are we doing now? You never asked for any part of her retirement and he didn't ask for it in his answers to interrogatories, either. What is the point of this?" Husband's counsel gave no response, asked wife no additional questions about her retirement, and offered no evidence as to its value. Wife, by contrast, offered into evidence a statement from the administrator of husband's retirement plan detailing the benefits to which husband would be entitled upon his retirement.

Based on wife's evidence, the commissioner recommended a division of the marital share of husband's pension and said husband should be ordered to elect payment of the benefits so as to provide a survivor annuity. He noted in his report that "[n]o evidence was produced [from which] to determine an appropriate award for the husband for the wife's anticipated retirement," and he "decline[d] to speculate." The trial court agreed with the commissioner's recommendations, overruled

-

husband's exceptions, and awarded wife fifty percent of the marital share of husband's pension.

We hold the trial court did not err in failing to award husband a portion of wife's retirement benefits while simultaneously awarding wife a share of husband's retirement benefits.

> Virginia's [equitable distribution] statute "mandates" that trial courts determine the ownership and value of all real and personal property of the parties. But, consistent with established Virginia jurisprudence, the litigants have the burden to present evidence sufficient for the court to discharge its duty. When the party with the burden of proof on an issue fails for lack of proof, he [cannot] prevail on that question.

Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987). Because husband offered no evidence of the value of wife's retirement benefits, the trial court did not abuse its discretion in excluding it from the equitable distribution award.

### C.

### SPOUSAL SUPPORT

A court determining whether to award spousal support pursuant to Code § 20-107.1 must consider, inter alia, "[t]he provisions made with regard to the marital property under § 20-107.3." Code § 20-107.3(E)(8). Because we reverse the trial court's equitable distribution ruling insofar as it held husband failed to prove retraceability of funds he inherited

-

from his mother, we direct the trial court to reconsider the spousal support award in light of this fact. Thus, we do not consider the merits of husband's claim that the current spousal support award is erroneous, but we note that decisions concerning spousal support, like decisions concerning attorney's fees, see discussion infra Part II.D., "rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994).

D.

ATTORNEY'S FEES

Husband contends the trial court erred in directing him to pay $2,500 of wife's attorney's fees, which constituted almost the entire bill. He argues that his 1999 adjusted gross income of $23,179.00 was not sufficiently different from wife's income of $20,391.77 to justify such an award. We disagree.

Whether to award attorney's fees is left to the sound discretion of the trial court. See, e.g., Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). Here, despite husband's assertions regarding the similarity in the parties' respective incomes, the evidence indicated that husband's 1999 income was substantially lower due to a one-time, four-month strike. During the first half of 2000, immediately prior to the commissioner's hearing, husband earned a monthly average of $3,252.80 as compared to wife's monthly average of

-

$1,726.  In light of these figures, we cannot say the trial court abused its discretion in ordering husband to pay $2,500 toward wife's attorney's fees of $2,575.  However, in view of the disposition of the equitable distribution issue, we remand to the trial court for reconsideration of the amount of the fee award.  See id.

### III.

For these reasons, we affirm the equitable distribution award in part and reverse it in part.  We also direct the trial court to reconsider the attorney fee issue and to consider the spousal support award anew in light of the alterations in the equitable distribution award.

Affirmed in part,
reversed in part,
and remanded.

-