COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


ROBERT CHARLES HOLDEN
                                          OPINION BY
v.   Record No. 1815-00-3            JUDGE G. STEVEN AGEE
                                          APRIL 24, 2001
JENA TAETZ HOLDEN


              FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                    Diane McQ. Strickland, Judge

              Charles B. Phillips (Phillips, Swanson &
              Phillips, on brief), for appellant.

              Frank K. Friedman (John P. Grove; Woods,
              Rogers & Hazlegrove, P.L.C., on brief), for
              appellee.


     Robert Charles Holden (husband) appeals a final order of

the Roanoke County Circuit Court regarding the equitable

distribution of property and the award of spousal support.  This

order came partly as a result of our remand in Holden v. Holden,

31 Va. App. 24, 520 S.E.2d 842 (1999) (Holden I).  For the

reasons set forth below, the order now on appeal is affirmed in

part, reversed in part and the case is remanded for further

proceedings consistent with this opinion.

                      I.  Background

     Husband and Jena T. Holden (wife) have been involved in an

acrimonious divorce proceeding for several years.  By a final

order dated October 28, 1998 (the 1998 order), the Roanoke

County Circuit Court awarded both parties a divorce a vinculo matrimonii, made an equitable distribution award of marital property and awarded spousal support to wife.

The 1998 order divided the marital property into two equal portions, based on valuations at that time, and assigned the various items comprising the marital property to husband or wife. For purposes of the current appeal, two of the assigned items of marital property are of particular note. The trial court assigned a parcel of land in Bedford County to husband valued at $30,000, and classified it as all marital property. The court also allocated certain corporate stock as follows:

> The Court does further ORDER and direct that the total number of shares of Rowe Furniture Stock be divided equally.

The trial court also provided in the 1998 order that husband pay wife monthly spousal support of $185.

The 1998 order, like the order now on appeal, is partly a narrative ledger of the assigned marital properties to husband and wife, yielding equal amounts at the end.

In Holden I, husband contended that $17,000 of the value of the Bedford County property represented husband's separate property and, therefore, was not subject to the equitable distribution division as marital property. Husband also appealed the award of spousal support, but later withdrew that assignment of error.

-

Husband prevailed in Holden I.  We agreed with his claim that $17,000 of the $30,000 value of the Bedford County property represented his separate property.  Our opinion in Holden I concluded with the following statement:  "[W]e reverse the equitable distribution award and remand for an order consistent with this opinion."  Id. at 29-30, 520 S.E.2d at 845.

While Holden I was pending before us, husband sought a hearing in the circuit court for reduction of the previously awarded spousal support.  On May 17, 1999, the trial court entered an order reducing the monthly spousal support from $185 to $100.  Husband apparently withdrew his assignment of error relating to spousal support before oral argument on his appeal and prior to the May 17, 1999 revised spousal support order.  He did not, however, obtain leave of this Court to proceed in the circuit court on his motion to reduce spousal support.

After our decision in Holden I, both parties filed notices to be heard on several topics in the trial court.  Husband sought a hearing on the following:  (1) "Termination of spousal support"; (2) "[t]o clarify division of the personal property"; (3) "[t]o divide [sic] the provisions for division of the Rowe Furniture Stock"; and (4) "[t]o set the monetary award pursuant to the Court of Appeals direction."  Wife asked the court to order:  "That [husband] be held in contempt of court for his failure to pay spousal support in accordance with the Court's Order dated May 17, 1999"; and "[t]hat [husband] be ordered to

-

take the necessary steps to divide the total number of shares of Rowe Furniture Stock in accordance with the Court's Order dated October 20, 1998."

At the April 12, 2000 hearing on these motions, the evidence was uncontradicted that the value of the Rowe Furniture Stock (Rowe stock) had declined in value by at least $9,000 since the 1998 order. The stock certificates, issued in husband's name, apparently could not be found and a fee was required to replace the certificates. Each party blamed the other for loss of the stock certificates and argued the other should pay the lost certificate fee. Husband also testified to adverse income tax consequences if sale of the Rowe stock was required as opposed to a distribution in kind.

The trial judge, sua sponte, announced at the hearing that the May 17, 1999 order reducing spousal support had been in error. Because the case was on appeal to this Court at that time, the trial judge ruled she lacked jurisdiction to reduce the support award. Accordingly, the court retroactively reinstated the $185 monthly support amount.

The trial court entered the order now on appeal, dated June 26, 2000 (the 2000 order), covering the issues presented at the April hearing. This order was a final order as contemplated by Code § 17.1-405(3).

The court resolved the remand issue of the separate property portion of the Bedford County land by ordering wife to

-

pay husband $8,530.[1]  Contrary to the 1998 order, the court then awarded all the Rowe stock to husband, yet assigned the value of $34,214 to that stock which was the value used in the 1998 order, not the current market value.  The court also ordered monetary adjustments for the disposition of certain tangible personal property and reimposed the $185 per month spousal support award retroactive to May, 1999.

Husband timely objected to the 2000 order and filed this appeal.

## II.  Analysis

Husband contends (1) the court failed to follow our mandate in Holden I because husband should have received an award of $17,000, not $8,530, for his separate property interest in the Bedford County property; (2) the court erred in assigning all the Rowe stock to him because the stock allocation was not an issue covered by our remand order; and (3) the court erred in reversing its prior reduction in spousal support because it erroneously concluded the pending appeal in Holden I deprived the trial court of jurisdiction.

---

[1] While $8,500 was one-half the $17,000 separate property amount, an additional $30 was added to correct a previous and unrelated clerical error, resulting in a total payment of $8,530; $8,530 is used herein in referring to the separate property adjustment instead of $8,500.

-

A.  The $17,000 separate property determination

Husband argues on appeal that the redistribution of the marital property in the 2000 order fails to follow the remand directions in Holden I.  We disagree.  A mathematical calculation shows the trial court's resolution is correct.

In the 1998 order, husband was deemed to have an entitlement to $15,000 of the $30,000 value as "his" half of the Bedford County land when that property was classified as all marital property.  In the recapitulation of all values for the assigned marital assets in the 1998 order, husband received the fee simple interest in the Bedford County land, so he "compensated" wife for her $15,000 interest in the land through other adjustments.  Husband also received the Bedford County property under the 2000 order, but, based on Holden I, $17,000 of its value is his separate property, leaving $13,000 of marital equity to divide ($6,500 per spouse).  Husband, therefore, is entitled to $23,500 of the value of the Bedford County land ($17,000 as his separate property interest and $6,500 for his half of the marital portion).  By awarding the husband $8,530 in the 2000 order, he received a $23,530 credit ($15,000 plus $8,530) for "his" separate and marital property interests in the Bedford County land.

-

Husband urges us to adopt his exhibit from the record as "the correct redistribution formula,"[2] which, he argues, entitled him to $17,060. This exhibit confirms the correctness of the trial court's ruling.

The exhibit reflects an assignment to husband of the equity in the Bedford County property. By assigning the equity in the property to husband, assuming equal distribution in kind of the Rowe stock, wife would receive $17,060 more of the total marital assets, $89,379 versus $72,319. Because husband received the complete fee simple interest in the Bedford County property, he already had received the $17,000 value of his separate property portion, as adjudicated by Holden I. If wife paid husband $8,530 as ordered by the trial court, each party would then

---

[2] Husband's exhibit provides, in pertinent part, the following calculation:

| Asset | Wife | Husband | Total Value |
|---|---|---|---|
| Marital residence | $55,000 | | $ 55,000 |
| 1993 Plymouth | $ 7,750 | | $ 7,750 |
| 1987 Boat | | $ 625 | $ 625 |
| Diamond Ring | $ 1,589 | | $ 1,589 |
| Life Insurance | $ 4,058 | $ 4,600 | $ 8,658 |
| Checking Account | $ 498 | | $ 498 |
| Savings Account | $ 200 | | $ 200 |
| Joint Account | $ 267 | | $ 267 |
| Credit Union Account | | $ 264 | $ 264 |
| Credit Union Account | | $ 427 | $ 427 |
| Rowe Furniture Stock | $ 0 | $ 0 | $ 0 |
| Comic Books | | $ 1,000 | $ 1,000 |
| Bedford land | | $13,000 | $ 13,000 |
| 401K | $20,017 | $52,403 | $ 72,420 |
| Totals | $89,379 | $72,319 | $161,698 |

Owed to Husband as a result of successful appeal $17,060 . . . .

-

receive $80,849 of marital property and, therefore, equal shares. By contrast, husband's argument for a $17,060 payment from wife would give him a windfall of $8,530.

We hold that the trial court properly followed the Holden I mandate by ordering wife to pay husband $8,530 in satisfaction of his separate property interest in the Bedford County property.

### B. Rowe Furniture Stock

Husband argues on appeal that the trial court erred in allocating to him all the Rowe stock, as opposed to equal distribution in kind as originally ordered. He contends the trial court lacked authority to change the stock distribution because that issue was not covered under our Holden I remand mandate. Although husband's argument is incorrect, we do find, nonetheless, that the trial court erred when reversing the distribution of the Rowe stock because the ruling is contrary to our holding in Wagner v. Wagner, 16 Va. App. 529, 431 S.E.2d 77 (1993) (en banc). See also Rowe v. Rowe, 33 Va. App. 250, 532 S.E.2d 908 (2000).[3]

Husband cites Virginia Electric and Power Company v. Westmoreland-LG&E Partners, 259 Va. 319, 526 S.E.2d 750 (2000), and Antonelli v. Antonelli, 242 Va. 152, 409 S.E.2d 117 (1991), for the proposition that the trial court lacked authority to

---

[3] There is apparently no relationship between the parties in Rowe and the Rowe Furniture Corporation.

-

address division of the Rowe stock.  Husband's reading of Antonelli is strained, at best, and Virginia Power contradicts his argument.

The final sentence in Holden I states:  "Accordingly, we reverse the equitable distribution award and remand for an order consistent with this opinion."  31 Va. App. at 29-30, 520 S.E.2d at 845.  We included no words of limitation to prevent the trial court from adjusting the equitable distribution award so as to comply with the remand mandate.  The Supreme Court of Virginia clearly enunciated this principle in Virginia Power:

> As explained in Nassif v. Board of Supervisors of Fairfax County, 231 Va. 472, 481, 345 S.E.2d 520, 525 (1986), "[w]hen we limit issues on remand we do so with words of limitation or restriction."

259 Va. at 323, 526 S.E.2d at 753.

Because we did not use words of limitation or restriction in the Holden I remand, the trial court was permitted to revise the equitable distribution award to the extent necessary to facilitate the restoration to husband of his separate property portion of the Bedford County property and to address the other issues left unfulfilled from the 1998 order which the parties asked the Court to settle.  Common sense dictates some adjustment to the 1998 distribution scheme was required so the adjustment due husband could be made.

The husband in fact invited the court to address the issue of the Rowe stock in his notice of hearing for the April 12,

-

2000 proceeding: "to divide [sic] the provisions for division of the Rowe Furniture Stock." As we noted in Steinberg v. Steinberg, 21 Va. App. 42, 461 S.E.2d 421 (1995): "He cannot approbate and reprobate - invite error and then take advantage of his own wrong." Id. at 50, 461 S.E.2d at 424.

We hold the trial court did err, though, by assigning all the Rowe stock to husband in contravention of its 1998 order. The evidence before the court was that the stock value had declined significantly following the 1998 order. Yet the trial court arbitrarily and without basis assigned all the Rowe stock and all the loss of its value to husband. This action is directly contrary to our holding in Wagner, where we said re-valuation on remand is necessary "to obtain the most accurate valuation and equitable distribution." 16 Va. App. at 531, 431 S.E.2d at 78. Our holding in this matter is further supported by Rowe, where we held:

> "We have stressed that the trial judge in evaluating marital property should select a valuation 'that will provide the Court with the most current and accurate information available which avoids inequitable results.'"
>
> *   *   *   *   *   *   *
>
> Where an asset that is subject to equitable distribution is retained by one of the parties for a period of time after valuation but before the equitable division occurs and the asset significantly increases or decreases in value during that time through neither the efforts or fault of either party, neither party should

-

> disproportionately suffer the loss or
> benefit from the windfall.

33 Va. App. at 263-64, 532 S.E.2d at 915 (citations omitted).

Nothing in the record shows the parties were bound by the valuation used in the 1998 order. The trial court made no finding or reference that husband or wife was at fault for failure to cause the equal distribution in kind of the Rowe stock. The 1998 order contains no directive as to who was required to facilitate the division and distribution of the stock. While each party blames the other for failing to cause the stock to be distributed, wife's claim of dire economic stress is dubious in view of the fact it took her over a year to raise the issue.[4]

We hold that the trial judge abused her discretion by failing to revalue the stock, particularly where uncontradicted evidence proved it had declined in value.

We explicitly hold that on remand the trial judge may revise the equitable distribution award to the extent necessary to facilitate an equal distribution of the marital property. An equal division in kind of the Rowe stock may avoid the necessity for revaluing the stock. If the court orders an equal division of the stock, the remaining assets, particularly those with a ready cash equivalency, such as bank accounts, could be adjusted

---

[4] This is precisely the type issue the trial court could address under Decker, as discussed in subsection C, infra.

-

in the final equitable distribution award to equalize the division of marital property and the other awards.  Should a cost be incurred to distribute the stock, the trial court could assign those costs as the circumstances indicate if the parties fail to agree on a cost allocation.  The court may also direct a particular person or method to facilitate the distribution and attach consequences for failure to timely do so.

### C.  Trial Court Jurisdiction Pending Appeal

Husband also claims the trial court erred by revoking its order reducing spousal support entered while Holden I was on appeal to this Court.  He argues, citing Decker v. Decker, 17 Va. App. 562, 440 S.E.2d 411 (1994), that because the spousal support issue was withdrawn before Holden I was decided, the trial court had jurisdiction to revisit spousal support as that subject matter was no longer a matter of controversy on appeal. We disagree.

The order on appeal in Holden I was a final order, not interlocutory, adjudicating all the matters in controversy between the parties.[5]  Otherwise, we would have lacked appellate jurisdiction under Code § 17.1-405.

The appeal of a final order divests the trial court of authority to modify, amend or change that order until the

_____

[5] The matter was retained on the circuit court docket for ninety days solely to monitor the division of tangible personal property.

-

appellate court has acted.  This principle was clearly

annunciated by the Supreme Court in Greene v. Greene, 223 Va.

210, 288 S.E.2d 447 (1982).

> The orderly administration of justice
> demands that when an appellate court
> acquires jurisdiction over the parties
> involved in litigation and the subject
> matter of their controversy, the
> jurisdiction of the trial court from which
> the appeal was taken must cease.  We
> acquired jurisdiction over this matter when
> Ms. Greene's petition for appeal was filed
> and docketed in the Clerk's Office of this
> Court, and thereafter corrections and
> alterations could be made only with leave of
> this Court.

Id. at 212, 288 S.E.2d at 448 (citation omitted).

Husband withdrew his assignment of error in Holden I

relating to spousal support, which he was entitled to do under

Rule 5A:36.  However, husband did not request leave from us to

seek any change or modification to the final order still on

appeal.  Husband's failure to seek and obtain leave from us is

fatal to his argument.

Husband cites Decker for the proposition that he can

continue to litigate issues in the trial court, notwithstanding

the trial court's final order, so long as those issues are not

specifically before the appellate court.  We disagree.  Decker

held as follows:

> This Court acquired jurisdiction when Ms.
> Decker's appeal was filed and docketed in
> the clerk's office of the Court of Appeals.
> Thus, while the trial court may enforce a
> support and custody order, it may not modify

-

> such order without leave of court.  Only under compelling circumstances would this Court likely grant such leave . . . . Because no leave of court was sought, the trial court did not err in refusing to modify the award.

17 Va. App. at 564, 440 S.E.2d at 412.

When a final order of the trial court is on appeal, the appellate court acquires jurisdiction over that case to the exclusion of the trial court, except to the extent the trial court must act to enforce the order pending appeal.  To adopt husband's position would thwart the orderly administration of justice by opening the door to perpetual relitigation, thereby preventing an appellate court from dealing with finality on the issues before it.

The trial judge correctly determined she lacked jurisdiction to reduce the spousal support award of the 1998 order while that order was on appeal.  The trial court, therefore, acted properly in the 2000 order to reverse its prior reduction of spousal support made while the 1998 order was on appeal.

The trial court's order of June 26, 2000 is (1) affirmed as to the disposition of the Bedford County separate property by having wife pay husband $8,530; (2) affirmed as to the reversal of the prior reduction in spousal support, and (3) reversed as to the allocation of the Rowe Furniture stock and remanded for

-

further proceedings regarding that matter which are consistent with this opinion.

<u>Affirmed in part, reversed in part and remanded.</u>